IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CASSANDRA SAMPSON | ) | |
| Plaintiff, | ) | |
| | ) | CA 06-10973-DPW. |
| v. | ) | |
| | ) | |
| BETH ISRAEL DEACONESS  MEDICAL CENTER | ) | |
| and HEATHER A. RICHTER, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
Leave to File Granted 12/5/08**

**I.     Introduction**

Plaintiff's Motion for Partial Summary Judgment contends that the defendant's

search policy discriminates on the basis of disability and that defendant refuses to

reconsider or waive its clothing removal requirement to accommodate her disability.

Defendant's opposition to plaintiff's motion for summary judgment rests on two

principal legal arguments: 1) that it has altered or is in the process of altering the

challenged search policy, rendering plaintiff's injunctive and declaratory relief claims

moot; and 2) that the challenged policy is based on risk of suicidality or self-harm rather

than psychiatric disability.

In response to defendant's arguments, plaintiff states: 1) the Supreme Court has

made clear that a plaintiff's right to injunctive and declaratory relief is not thwarted by a

defendant's last-minute policy changes to conform to the law; and 2) the law considers

adverse action based on suicidality or self-harm to be disability-based, and defendant's

1

claim that its search policy is solely oriented toward risk is defeated by its admission that non-disabled patients it suspects of carrying weapons are not subject to mandatory search, while psychiatric patients that it perceives as potentially being at risk of self-harm are restrained and forcibly searched. Finally, defendant essentially has conceded plaintiff's reasonable accommodations claim.

## II. Beth Israel Cannot Avoid Injunctive and Declaratory Relief by Voluntarily Changing its Search Policy Years After Initiation of Litigation.

Plaintiff's Motion for Partial Summary Judgment requests the Court to grant injunctive and declaratory relief regarding a search policy that unquestionably dictated defendant's actions on March 25, 2005 – the day of the discriminatory actions challenged in this case – but that defendant claims is no longer in effect, Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment p. 14, Paragraphs ## 50-52 (hereafter "DO").[1]

The Supreme Court has held that a defendant cannot avoid injunctive and declaratory relief by a last minute conversion to the principles for which plaintiff has been arguing throughout the litigation. *Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 189 (2000)(announcing "stringent" standard that defendant's voluntary cessation of allegedly illegal conduct does not deprive court of power to hear and determine the case unless it is "absolutely clear that the allegedly wrongful behavior could not be expected to recur."). Defendant's burden to meet this standard is "heavy," even "formidable." *Id.* at 189, 190.

In determining whether it is "absolutely clear that the challenged behavior will not recur," courts have focused on "three factors: (1) whether the challenged conduct was

---

[1] Defendant admits that 'the principles contained therein [in the disputed search policy] are still followed." DO # 53.

isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely v. MRI Radiology,* 505 F.3d 1173, 1184 (11th Cir. 2007)(medical office's change of service dog policy during ADA litigation did not moot injunctive relief claim). In this case, Ms. Sampson challenges not an "isolated or unintentional" act, but defendant's well-established search policy, which defendant's own witness testified results in at least one involuntary clothing removal per week. DO # 79.

BIDMC changed this policy only at the last minute. The first time was after the close of fact discovery (Docket #s 104-111), and defendant stipulated at the time that the policy changes did not "alter on its face or in practice the universe of patients subject to involuntary search." (Docket # 110). Defendant is currently engaged for the first time in meaningfully changing its policy. The fact that this is occurring during dispositive motions creates a presumption against mootness. *See, Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 109 (1998)(presumption of future injury when cessation occurs in response to litigation); *DeJohn v. Temple University,* 537 F.3d 301, 309 (3rd Cir. 2008)(injunctive relief required when defendant did not change challenged policy until after start of litigation).

Finally, defendant still strongly defends its search policy. "A defendant's failure to acknowledge wrongdoing …ensures that a live dispute between the parties remains," *Sheely v. MRI Radiology,* 505 F.3d at 1187, citing *United States v. W.T. Grant,* 345 U.S. 629, 632 (1953) ("the public interest in having the legality of the practices settled[ ]

militates against a mootness conclusion"); *see DeJohn v. Temple University,* 537 F.3d 301, 309 (3rd Cir. 2008).

The challenged search policy is the one applied to Ms. Sampson on March 25, 2005 and the one that all of the defendant's expert witness reports, its 30(b)(6) witnesses' testimony, and plaintiff's experts addressed in their reports and deposition testimony. Defendant now states that its new search policy will prohibit involuntary clothing removal unless there is "compelling information demonstrating that she is at imminent risk of harm," DO p.14. Defendant incorrectly claims that this policy is in response to "newly promulgated national and state standards"—as defendant admits, national standards requiring imminent risk of harm were promulgated almost a decade ago. DO ## 80-101. Moreover, there is no claim made by the defendant that the "new" policy complies with other federal laws, like the ADA and Section 504, and specifically that it will allow reasonable accommodations as required by these laws.

Defendant's voluntary cessation of its wrongful policy, ten years after federal regulations were passed and two and a half years into litigation, with no admission of wrongdoing, means that plaintiff is entitled to declaratory and injunctive relief from this court to ensure that defendant's new policy – assuming it complies with the ADA and other federal and professional standards – remains in place.

**II      Defendant Does Not Dispute Most of the Elements of Plaintiff's ADA or Section 504 Claims.**

   A.      *There Is No Dispute that the Plaintiff and Defendant Are Covered by the ADA and Section 504.*

Defendant does not dispute that Ms. Sampson is a person with a disability, has a history of disability, or is regarded as having a disability under the ADA and Section 504

4

of the Rehabilitation Act.  Nor does it dispute that she has a physical or mental impairment that substantially limits one or more major life activities. Defendant admits that Ms. Sampson has a longstanding diagnosis of depression and post-traumatic stress disorder, which are mental impairments DO # 1, as well as "a number of medical conditions," DO # 7, and admits that Ms. Sampson is limited in some life activities.  DO # 8. Defendant admits Ms. Sampson has been hospitalized on many occasions. DO # 9. Defendant has made no legal argument that Ms. Sampson is not a person with a disability.

Similarly, defendant does not contest that Beth Israel Deaconess Medical Center is a public accommodation under Title III because it is a hospital. DO # 22. It receives federal funds under Section 504 of the Rehabilitation Act. DO # 23.

B.      *There is no Material Dispute of Fact that Defendant's Search Policy Discriminates on the Basis of Psychiatric Disability.*

Defendant admits that it has a search policy, DO # 38, that subjects pre-existing categories of patients to mandatory search, DO # 39, and that patients who refuse to remove their clothing are restrained and their clothing is involuntarily removed. DO ## 64, 65. The defendant admits that holding patients down for the purpose of involuntarily removing their clothing is a restraint, DO # 65, and that the use of restraint carries significant risk.  DO # 56.  The defendant admits it is subject to federal and state restraint regulations, DO ## 80-101, and acknowledges that plaintiff's characterization of these standards. *Id.*  Defendant does not challenge plaintiff's legal argument that the search policy applied to Ms. Sampson violated those standards, but rather argues that its ongoing modification of its search policy will bring the policy into compliance with those standards, making plaintiff's injunctive relief claims moot. DO p.14.  As plaintiff has

shown above, her injunctive and declaratory relief claims cannot be mooted by policy changes at this late date.

      1.   <u>Defendant Does Not Dispute that its Challenged Search Policy Targets People Triaged to Psychiatric (but not Medical) Levels I and II and/or Those Perceived by its Triage Nurse as Potentially Suicidal.</u>

Plaintiff challenges two mandatory search categories as discriminatory:[2] patients triaged to psychiatric emergency triage levels I and II, and patients deemed to be at potential risk for suicidality or self-harm. As to the first category, defendant's search policy clearly states that patients in these categories are subject to mandatory search, and defendant's own witness confirms it.  DO, Exhibit H, pp. 119, 126.  Because this category is, by its terms, limited to patients triaged to *psychiatric* emergency levels I and II, the policy targets people with psychiatric disabilities on its face.

The defendant claims that it bases its mandatory search, including restraint and clothing removal, on "risk" rather than psychiatric disability or symptoms of disability. DO # 59.  However, defendant admits that all patients deemed at risk of self-harm by a triage nurse are placed on suicide precautions, DO ## 40, 45, and that a patient may be placed on suicide precautions even if he or she denies any intent to harm him or herself DO # 48.

      2.   <u>Defendant Admits its Policy Does Not Require Mandatory Search of Patients Perceived to be Carrying Weapons.</u>

If defendant's search policy were truly based on potential risk rather than perceived psychiatric suicidality or self-harm, then "patients suspected of carrying weapons" would presumably be subject to search. Yet defendant admits that:

---

[2]   For purposes of plaintiff's motion for partial summary judgment only, she accepts defendant's characterization of the scope of its search policy. Therefore, defendant's denial that it subjects all psychiatric patients to its search policy, DO  ## 35, 36, is not material to plaintiff's motion.

staff have discretion in handling a patient suspected of carrying a weapon. The defendant denies that such facts are material to the case at hand, which involves the search of a patient diagnosed as suicidal, which differs from a patient who may be carrying a weapon and may not be at risk of harm to self or others. DO # 70.

In fact, defendant admits that its search policy "has nothing to do with the number of patients who bring weapons into the ED." DO # 61. The fact that defendant mandates restraint and involuntary clothing removal of patients perceived to be suicidal because it regards such patients as posing greater risks than patients suspected of "carrying a weapon" goes to the core of plaintiff's discrimination suit.

Defendant's opposition does not discuss, let alone distinguish, the cases that hold that decisions made on the basis of perceived suicidality, risk of harm to self, or other symptoms are decisions made on the basis of disability for purposes of the law. *Peters v. Baldwin Union Free School District*, 320 F.3d 164 (2nd Cir. 2003), *Chandler v. Specialty Tire,* 2005 U.S.App.LEXIS 11992 (6th Cir. June 17, 2005), *Stokes v. City of Montgomery,* 2008 U.S.Dist.LEXIS 73889 **12-14 (M.D.Ala. Sept. 25, 2008).  Under the law, its search policy that explicitly targets two categories of psychiatric patients for highly intrusive restraint and involuntary clothing removal based on perceived suicidality or risk of self harm, is disability-based decisionmaking that defendant must justify by "objective scientific information." *Bragdon v. Abbott*,  524 U.S. 624, 649 (1998).

>   3.   Defendant Admits it Has No Objective Evidence that Patients in the Two Challenged Categories Are More Likely to be Carrying Weapons or Sharp Objects.

Defendant differentially searches psychiatric and medical patients for one of two reasons:(1) it believes that psychiatric patients are more likely to bring "weapons or other harmful objects" into the ED; or (2) it believes that certain groups of psychiatric patients

are more likely to use harmful objects to hurt themselves or other people. Both of these

assumptions require, under the ADA and Section 504, data or research literature or

"objective scientific information" to support this differential treatment, especially in light

of plaintiff's experts' testimony about national practice and citation to research literature

that shows exactly the opposite. Plaintiff's Motion for Partial Summary Judgment,

Material Facts Not in Dispute, Exhibit 32. The law requires defendant to show "a

scientific basis" for its arguments that people who its triage nurse perceives to be suicidal

or at risk of self-injury are more likely to be carrying weapons or sharp objects on their

person or in their clothing, or more likely to use any weapons or sharp objects, than

medical patients suspected of carrying weapons. *Bragdon v. Abbott*, 524 U.S. 624, 650-

651 (1998).  Defendant admits it has no data of its own, no data from others, and no

research. DO ## 60, 61.  It cannot point to "the views of public health authorities" to

support its position, *Bragdon v. Abbott*, *id.* at 650, because its policy violates the

regulations of national and state public health agencies.

Defendant's proffer that its discriminatory policy is based on "common sense"

DO # 59, or "collective education, training and experience" DO # 69, is insufficient,

especially when common sense, education, training and experience result in a policy that

violates federal and state regulations on restraint. DO p. 14.  If there is one thing the

ADA means, ever since a baseball coach in a wheelchair first sued to be allowed on the

field, *Anderson v. Little League,* 794 F.Supp. 342 (D.Ariz. 1992), it is that policies based

on unsupported fears about the risks presented by people with disabilities must be struck

down.  If ski resorts cannot prohibit people in wheelchairs from riding ski lifts on the

basis of "common sense," *Leiken v. Squaw Valley Ski Corp.,*  1992 U.S.Dist.LEXIS

21281 (E.D.Ca. June 28, 1994) and ambulance companies cannot refuse to employ one-armed applicants on the basis of "common sense," *Gillen v. Fallon Ambulance Service,* 28 F.3d 11 (1st Cir. 2002), then defendant must proffer some objective evidence supporting its policy. Defendant has not done so.

Plaintiff does not challenge the importance of identifying patients at risk of self harm. Nor does she challenge defendant's policies on "Suicidal Precautions" or "One to One Observation." Plaintiff does not dispute defendant's policy of closely observing patients considered at risk of self-injury or of harm to others.

But plaintiff *does* challenge the result of identifying a patient in a 3-5 minute interview as being potentially suicidal: a mandatory, highly intrusive restraint and involuntary clothing removal. As in jail strip search cases, where the need for security is balanced against the rights of the individual to be free from unreasonable search, the question here is the nexus -- or lack of it -- between the very broad category of patients that a triage nurse untrained in mental health might perceive to be at risk of self-injury in a 3-5 minute interview, and the mandatory restraint and forcible search of patient in one of these categories, absent any evidence that the individual ever had a weapon or dangerous object on his or her person.

C.   *Defendant Has Not Disputed Plaintiff's Claim to Reasonable Accommodation.*

The First Circuit has underscored that mandatory safety policies, even those with laudable aims, must require exceptions or waivers if necessary to reasonably accommodate people with disabilities, *Dudley v. Hannaford Stores*, 333 F.3d 299, 309 (1st Cir. 2003). Defendant has admitted that it could and did reasonably accommodate Ms. Sampson's desire to retain her pants prior to March 25, 2005, DO ## 20-21, that her

complaint following this event alerted BIDMC management to the fact that this accommodation was occurring, and that it then – without explanation or justification -- determined to end it and prohibit any accommodations, not matter how reasonable, in the future. DO ## 169-171. Defendant admits there is no waiver or exception granted to its clothing removal policy. DO ## 64, 71 (admitting as to each challenged category that patients would be required to disrobe).

Defendant also admits the only "reasonable accommodation" it currently offers to the difficulty a psychiatric patient with PTSD and a history of brutal sexual abuse experiences in removing her pants is to "ask the patient to cooperate and explain the need for the search and to involve the physician." DO # 75.

1. Beth Israel Admits That It Has the Capacity to Provide Each of the Plaintiff's Enumerated Alternatives to Involuntary Clothing Removal.

In her Motion for Partial Summary Judgment, plaintiff asserted that defendant had numerous alternative means to ensure the safety of patients its triage nurses deem to be potential risks, including sitters who watched patients at all times, metal detector wands to search patients, pat down procedures to check for dangerous objects, and psychiatric consultation twenty-four hours a day, seven days a week, to assess the a patient's behavior and risk. Defendant admits each of these alternatives exist and are readily available. DO ## 49, 76, 77. Nevertheless, defendant refuses to consider any of these alternatives, or other accommodations, for psychiatric patients who will be obviously harmed by forcibly stripping and restraint.

Defendant does not deny that Ms Sampson has a psychiatric disability, which is associated with her long history of childhood sexual abuse. Defendant does not deny that it successfully accommodated Ms. Sampson's desire to retain her pants during many

10

visits to its Emergency Department until 2005, regardless of her psychiatric condition.  It does not deny that since March 2005, as a matter of policy, it has refused to waive this policy or permit its professionals to exercise discretion regarding clothing removal for any individual who is perceived to be at risk of self-harm or suicidality, regardless of the impact of restraint and forcible clothing removal on the patient's disability. It acknowledges that medical patients suspected of carrying weapons are not automatically searched if they refuse to remove their clothing.  Defendant admits that it has available to it the range of reasonable accommodations that Ms. Sampson requested, and that it waived the clothing removal requirement for Ms. Sampson in the past. Defendant does not claim that providing Ms. Sampson with her requested accommodation would fundamentally alter its services.

Ms. Sampson asked for and received an accommodation from defendant for years to keep her pants on when she went to its emergency department for psychiatric reasons. The law requires defendant to reasonably accommodate Ms. Sampson's disability if it can do so. The accommodation Ms. Sampson seeks was reasonable when she first sought it, was reasonable when Beth Israel granted it in the past, and it remains reasonable now, in part because defendant has many means available to it of ensuring safety in its hospital.

## IV.    Conclusion

For the foregoing reasons, plaintiff respectfully requests that the court grant her motion for partial summary judgment.

Respectfully submitted,


/s/ Susan F. Stefan
Susan Stefan, BBO No. 600897
Steven J. Schwartz, BBO No. 448440
Center for Public Representation
246 Walnut Street
Newton, MA 02460
Tel. 617-965-0776


Clyde Bergstresser, BBO No. 039200
Scott Heidorn, BBO No. 661787
Campbell, Campbell, Edwards & Conroy
One Constitution Plaza
Boston, MA 02129


Ira Burnim, DC Bar No. 406154
Karen Bower, DC Bar No. 450888
Bazelon Center for Mental Health Law
Suite 1212
1101 15th Street, N.W.
Washington, DC 20005


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing. Parties may access this filing through the court's CM/ECF System.


Dated: December 8, 2008                    /s/ Susan F. Stefan